THE DENVER, TEXAS & GULF RAILROAD COMPANY, AP-
PELLANT, v. ROBBINS ET UX., APPELLEES.

2  313
26s  23
2  313
30s  457

1. PLEADING—NEGLIGENCE.
Negligence is sufficiently charged in a complaint which states that the
    defendant railroad company was unlawfully and negligently occu-
    pying a street crossing with its engines in violation of a city ordi-
    nance, and that by reason of that fact, and without negligence on
    part of the plaintiff, the injury complained of resulted.
2. NEGLIGENCE PER SE.
The obstruction of a street crossing by railroad engines, in violation of
    an ordinance, constitutes negligence *per se* on part of the railroad
    company.
3. PROXIMATE CAUSE—A TEST.
In determining what is the proximate cause of an injury one of the
    most valuable of the *criteria* is to ascertain whether any new cause
    has intervened between the fact accomplished and the alleged
    cause.  If a new force or power has intervened, of itself sufficient
    to stand as a cause of the misfortune, the other must be considered
    as too remote.
4. PROXIMATE CAUSE—A QUESTION OF FACT.
Ordinarily the question of what was the proximate cause of an injury
    is one for the jury and not for the court.

*Appeal from the District Court of El Paso County.*

THE facts are fully stated in the opinion of the court.

Messrs. TELLER & ORAHOOD, for appellant.

Mr. T. A. McMorris, for appellees.

RICHMOND, P. J., delivered the opinion of the court.

The appellees brought this action to recover for the loss of
their child.  It is alleged in the complaint that on March 9,
1888, while the Denver, Texas & Gulf Railroad Company
were operating a railroad through the city of Colorado
Springs, its employees unlawfully and negligently caused to

stop and stand two of its engines and trains on Cucharas
street crossing in said city in such a manner that the engines
stood upon the crossing facing each other and occupied all
of the street except about twenty-five feet in the middle,
said street being one hundred feet wide; that all persons
passing along said street were obliged to pass to the middle
of the street and through this space between the engines;
that Anne Robbins, one of the plaintiffs and wife of Daniel
W. Robbins, with their daughter aged three years was, while
the engines were so remaining, passing on foot between the
locomotives on her way to their home; that an omnibus team
came immediately behind her, and the horses, becoming
frightened at the engines and the noise and confusion of the
steam then escaping from them, violently and with uncon-
trollable force jumped, swayed aside and ran over plaintiffs'
child, which resulted in her death. It is also alleged that
the death was the result of negligence on the part of defend-
ant in permitting the engines to stand upon the street cross-
ing in violation of an ordinance of the City of Colorado
Springs, and was without fault or negligence on the part of
the plaintiffs or either of them.

The answer admits the injury and death of the child, and
denies all the other allegations of the complaint.

The cause was tried to a jury and, after all the testimony
of plaintiffs and defendants had been introduced, a motion
was interposed for an instruction to find for the defendant,
which was refused, but the court generally instructed. The
jury returned a verdict for the plaintiffs in the sum of $3,000.
Motion for a new trial was denied and judgment rendered
on the verdict. To reverse this judgment appellant prose-
cutes this appeal.

The testimony shows that the depot of the defendant
company was located near the crossing where the alleged ac-
cident occurred; that a freight engine was detained at the
depot awaiting the arrival of a delayed passenger train,
which on its arrival was halted at the edge of the plank cross-
ing in the middle of the street; that the omnibus was at the

depot for the purpose of receiving the passengers, and having obtained its load the driver started to cross the street. between the two engines and immediately behind the plaintiff, Anne Robbins, with the little child; that one of the horses suddenly plunged or jumped in such a manner as to cause the tongue or pole of the bus to strike Anne Robbins, knocking her down, and the wheel of the bus passed over the child, resulting in its death.

It is also in testimony that the street is about one hundred feet wide and that the crossing of plank was twenty-five feet in width and a part of the road used to drive over; that the cowcatcher of the passenger train was over the crossing.

There is some conflict of testimony with reference to the amount of steam that was escaping from one or both of the engines, but substantially it is agreed or undisputed that the two engines were on the street and close to the plank crossing, possibly with their noses projecting over the plank; that the space between the two engines was between twenty-five and thirty feet; that this space was the point where teams usually crossed, and was planked for that purpose; that the horses when on the crossing or just about leaving the crossing became frightened at the engines and escaping steam.

It is claimed by appellant that the complaint does not state facts sufficient to constitute a cause of action, because it appears by the complaint that the alleged negligence of the defendant company was not the proximate cause of the injury complained of. It is further contended that the evidence did not establish the fact to be that the alleged negligent act of defendant was the proximate cause of the injury complained of; that it was not enough to show that an accident had occurred and damages had been sustained.

It is contended by appellees that the unlawful occupation of the street in violation of the ordinance was negligence, and that the fact that they were so unlawfully occupying the street caused the horses to become frightened, which re-

sulted in the death of the child. Consequently that the neg-
lect of the defendant company was the proximate cause of
the injury for which damages are sought. And that the
question of whether the neglect was a proximate cause was
a question for the jury, and not for the court.

The complaint alleges that the railroad company was un-
lawfully and negligently occupying a street crossing in viola-
tion of the city ordinance, and that by reason of the fact that
the defendant company so negligently caused and permitted
its engines to stand upon the street crossing and without any
negligence on the part of the plaintiffs or either of them the
injury resulted. We do not deem it necessary to state more
of the complaint than this bare outline. It is sufficient to
charge the company with negligence and that by reason of
the company's negligence the injury resulted. *Billman v.
Indianapolis etc. R. R. Co.*, 76 Ind. 166.

In the foregoing case a complaint of a similar nature was
passed upon and it was held sufficient. In the course of the
discussion, Elliott, J., says: "In a carefully prepared and very
able brief, appellee's counsel urges that no cause of action is
shown, because the result was one which the appellee's ser-
vants could not have anticipated, and because the injury was
not the proximate result of the negligence of the servants of
the appellee."

The argument there advanced is precisely the argument
here. And the reasoning of the court there is directly appli-
cable to this case.

And the court further says: "It is true, as urged by coun-
sel, that the injury alleged as the cause of action did not di-
rectly and immediately result from appellee's negligence, for
there was an intervening agency. The premise is well as-
sumed, and the question is: Does the conclusion drawn logi-
cally follow? If the maxim quoted is to be given the wide
sweep which appellee claims, then, wherever there is an
agency intervening between the original cause and the injury,
there can be no recovery. This is not the law. An inter-

vening agency does not always shield the wrongdoer from responsibility, where the injury flows from his wrongful act."

In that case as in this a railroad company and horses were a prominent feature. And we consider that case sufficient authority, without further citations, to warrant us in asserting that the complaint in this case states facts sufficient to constitute a cause of action. This brings us then to the discussion of the main question : Was the negligence of the company the proximate cause of the injury ?

It is admitted in the argument that the occupation of the street crossing by the company in the manner alleged and proven was unlawful, and that this of itself was negligence there can be no doubt.

In the case of *Young v. G. H. & M. Ry. Co.*, 56 Mich. 430, it was held that, " a railroad company has no right to obstruct a highway with its cars for a longer period than five minutes at any one time, a violation of its duty in this respect is negligence and if a party is injured by reason thereof, being free from fault on his own part, the company will be liable therefor."

In the case of *Correll v. The B. C. R. & M. R. R. Co.*, 38 Iowa, 120, it was held that, " the running of a railroad train within city limits at a prohibited rate of speed constitutes negligence *per se.*"

In the foregoing Michigan case the statute permitted railroad companies to occupy street crossings for a period of five minutes and no longer. And the allegations of the complaint were that the railroad company occupied the street crossing for a period of ten minutes. In the case at bar no such privilege was accorded to the railroad company, and the occupation of the street crossing for any length of time constituted an unlawful occupation and no testimony is introduced to show that such an occupation was even reasonable or necessary.

In addition to the authorities cited we think our own supreme court in the case of *Blythe et al. v. The Denver & Rio Grande Ry. Co.*, 15 Colo. 333, has practically settled the ques-

tion under consideration. Many of the authorities referred to in this case are there reviewed, and it was held that the question of what was the proximate cause of the loss and of negligence were questions of fact to be determined by the jury from the evidence under proper instructions from the court.

Where the statute imposes a duty, the failure to discharge this duty constitutes negligence. *Dodge v. The Burlington, C. R. & M. R. R. Co.*, 34 Iowa, 276.

Yet it is claimed that notwithstanding the railroad company unlawfully occupied the street crossing, that nevertheless this negligence and this unlawful occupation was not the proximate cause of the injury. It is admitted that the negligence of the railroad company must be the proximate cause of the injury in order to entitle the plaintiffs to recover. As to what is proximate cause different tests have been suggested. But when one has examined them all it remains for the courts to decide each case largely upon the special facts belonging to it, and often upon the very nicest discrimination. As was said by Justice Miller in the case of the *Insurance Company v. Tweed*, 7 Wallace, 44 : " One of the most valuable of the *criteria* furnished us by these authorities, is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened of itself sufficient to stand as a cause of the misfortune, the other must be considered as too remote."

The record in this case discloses the fact to be that the railroad company was unlawfully occupying the street crossing; that the driver, after receiving his load of passengers, had an undoubted right to proceed to convey them to their destination in the city, and in order to do so was warranted in crossing the street between the engines ; that the plaintiff Mrs. Robbins, with her child, was equally entitled to cross at the same point. In fact the case discloses no neglect on the part of the plaintiffs, nor on the part of the omnibus driver. And we believe that we are justified in holding that but for the proximity of the defendant's engines to the plank crossing of

the street and its unlawful occupation of the same that the horses would not have become so frightened and unmanageable as to have caused the injury complained of.

"One who does an act likely to cause horses to take fright must be deemed to be responsible for injuries caused by horses running away under the influence of fright. This responsibility is not to be confined to the horses which suffer directly and immediately from fright, but must be held to extend to such injuries as may be reasonably expected.to be caused by them running away. It is not unusual or unnatural, for horses, panic-stricken by fear, to run against and injure persons and property, and what is neither unnatural nor unusual the wrongdoer must be held to have anticipated." *Billman v. Indianapolis, etc. R. R. Co., supra.*

The case of *Insurance Company v. Tweed, supra,* was a case where cotton in a warehouse was insured against fire. The policy containing an exception against fire which might happen by means of an * * * *explosion,* earthquake or hurricane. An explosion took place in another warehouse, situated directly across a street, which threw down the walls of the first warehouse, scattered combustible materials in the street, and resulted in an extensive conflagration, embracing several squares of buildings, and among them the warehouse where the cotton was stored, which, with it, was wholly consumed. The fire was not communicated from the warehouse where the explosion took place directly to the warehouse where the cotton was, but came more immediately from a third building, which was itself fired by the explosion. In this case it was held that the explosion undoubtedly produced or set in operation the fire which burned the plaintiff's cotton. The fact that it was carried to the cotton by first burning another building supplies no new force or power which caused the burning. Nor can the accidental circumstance that the wind was blowing in a direction to favor the progress of the fire towards the warehouse be considered a new cause. In this case the court held that the insurers were not liable

because of the fact that the fire originated from the explosion against which they had expressly exempted themselves.

In the case of *Milwaukee, etc. Ry. Co.* v. *Kellogg*, 94 *U. S.* 470, the question of what is or what is not the proximate cause of an injury was involved. Several cases were cited from New York and Pennsylvania, and Justice Strong in commenting upon them said: " Those cases have been the subject of much criticism since they were decided and it may, perhaps, be doubted whether they have always been quite understood. If they were intended to assert the doctrine—that when a building has been set on fire through the negligence of a party, and a second building has been fired from the first, it is a conclusion of law that the owner of the second has no recourse to the negligent wrongdoer—they have not been accepted as authority for such a doctrine, even in the states where the decisions were made. And certainly they are in conflict with numerous other decided cases. * * * The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement."

In *Ricker v. Freeman*, 50 N. H. 420, the court held that: " Where an injury is the result of two concurring causes, one party in fault is not exempt from full liability for the injury, although another party may be equally culpable."

" This was a case where B seized A by the arm and swung him violently around two or three times, then letting him go, and A having thus been made dizzy, involuntarily passed rapidly in the direction of and came violently against C, who instantly pushed him away, and A then came in contact with a hook, and sustained an injury; it was held that A might maintain trespass *vi et armis* against B."

The case of *Billman v. C. & L. R. R. Co.* 76 Ind. 166, was one where it was alleged that a railroad company through its servants and agents managed and operated its locomotive and cars in such a recklessly and culpably negligent manner as to willfully and wrongfully cause a team of horses to take fright and run away, and that, because of such fright, and while unmanageable and running away, they ran against the plaintiff's horse and caused its death. It was held that the maxim, *causa proximi, et non remota, spectatur*, was not applicable, but that the injury sued for was the usual and proximate result of the wrongful act of the company, showing not passive negligence, but wanton and willful wrong in this, that the railroad company negligently and wantonly sounded a steam whistle causing the horses to take fright and run off.

In the case of *Lake v. Milliken et al.*, 62 Maine, 420, it was held that, " every wrongdoer is at least responsible for all the mischievous consequences that might be reasonably expected under the circumstances to result from his misconduct. Where the injury is the result of two concurring causes, the party responsible for one of these causes is not exempt from liability because the person who is responsible for the other cause may be equally culpable."

In the case of *Lehigh Valley R. R. Co. v. McKeen*, 90 Pa. St. 122, it was held that the question of proximity was one of fact peculiarly for the jury. And in passing upon this question the court took occasion to say : " How near or remote each fact is to its next succeeding fact in the concatenation of circumstances from the prime cause to the end of the succession of facts, which is immediately linked to the injury, necessarily must be determined by the jury. These facts or circumstances constitute the case, and depend upon the evidence.

The jury must determine, therefore, whether the facts constitute a continuous succession of events, so linked together, that they become a natural whole, or whether the chain of events is so broken, that they become independent, and the

final result cannot be said to be the natural and probable consequence of the primary cause—the negligence of the defendant. * * * In all or nearly all cases, the rule for determining what is a proximate cause is, that the injury must be the natural and probable consequence of the negligence, and that this might and ought to have been foreseen under the surrounding circumstances. These are the circumstances of the particular case, and from the nature of the thing must be referred to the jury." *Railroad Co. v. Hope,* 30 P. F. Smith, 373.

In the case of *Crawfordsville v. Smith,* 79 Ind. 308, it was held that, " Where the negligence of the defendant is the cause of an injury, an action will lie, although there may have been some intervening agency."

The case of *Joseph Lowery, an Infant, v. Manhattan Ry. Co.,* 99 N. Y. 158, was a case where " fire fell from a locomotive on defendant's road upon a horse attached to a wagon in the street below, and upon the hand of the driver. The horse became frightened and ran away, the driver attempted to drive him against the curbstone to arrest his progress, the wagon passed over the curbstone, threw the driver out, and plaintiff who was on the sidewalk, was run over and injured." In this case it was held that so long as the injury was chargeable to the original wrongful act of the defendant, it was liable; that the action of the driver in view of the exigency of the occasion, whether prudent or otherwise, might be considered as a continuation of the original act, and so that act was the proximate, not the remote cause of the injury." It was held also, " that the injury was a natural and probable consequence of the defendant's negligence."

The foregoing is a well considered case, and in support of the conclusion a large number of authorities are cited.

The case of *Forney v. Goldmacher,* 75 Mo. 113, was one where, " Defendant finding a team of horses hitched to a post in the street in front of his premises, willfully and intentionally threw a stream of water from a hose upon them, whereby they were frightened and breaking away ran down the street

and collided with plaintiff's team.  Held, that plaintiff was entitled to recover of defendant the damages caused by the collision." *Flagg v. The Inhabitants of Hudson*, 142 Mass. 280.

After a careful examination of all the authorities within our reach in which this perplexing question of proximate and remote cause is discussed, we have concluded that the rule as announced by the supreme court of the United States and by a majority of the state supreme courts is that ordinarily the question of what was the proximate cause of the injury is a question of fact to be determined by the jury: And, that the jury having passed upon this question in the case at bar, we would be unwarranted in disturbing the judgment.

The judgment is affirmed.

*Affirmed.*