## FIELD, Adm'r, *v.* CHICAGO, B. & Q. RY. CO.

*[Circuit Court, D. Iowa. 1882.)*

1. **HIGHWAY CROSSINGS ON RAILROADS—NEGLIGENCE—PERSONAL INJURIES.**
   The liability of a railroad company for death or personal injuries caused by the neglect of the company to put up at highway crossings the sign-board to warn travelers along the highway of danger from the proximity of the railroad train, does not attach absolutely under the statute where it appears the damages sustained were the result of the injured party's own negligence, and were not caused by the absence of the sign-board.

2. **SAME—STATUTE CONSTRUED—SIGN-BOARDS AT CROSSINGS.**
   The intention of the statute was not to create an absolute liability on the part of the railroad company, but to make the failure to provide sign-boards at highway crossings conclusive evidence of negligence on the part of the company.

This action is before the court on motion for a new trial on the ground of misdirection to the jury as to the law of the case. Plaintiff's intestate was killed by a moving train while attempting to cross defendant's road with a team at a public crossing. The statute of Iowa, § 1288, requires a sign-board to be set up at public crossings as a warning, and plaintiff claimed that the neglect to set up such sign-board at the highway crossing where the injury occurred made the defendant absolutely liable under the statute, and requested the court to charge the jury to that effect, which the court refused. The question was upon the construction of the statute, which is as follows:

Sec. 1288, Code of Iowa. "Every corporation constructing or operating a railway *shall make proper cattle-guards* where the same enters or leaves any improved or fenced land, and construct at all points where such railway crosses any public highway, good, sufficient, *and safe crossings and cattle-guards,* and erect at such points, at a sufficient elevation from such highway to admit of free passage of vehicles of every kind, a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railway and warn persons of the necessity of looking out for the cars; and any railway company neglecting or refusing to comply with the provisions of this section *shall be liable for all damages sustained by reason of such neglect and refusal,* and in order for the injured party to recover, it shall only be necessary for him to prove such neglect and refusal."

*William McNett, John A. Shank,* and *Barcroft & Gatch,* for plaintiff.
*H. H. Trimble, J. W. Blythe,* and *Stiles & Lathrop,* for defendant.

LOVE, D. J.   What is meant by the terms "absolute liability" as here used?   They mean a liability created by positive law, free from any conditions whatever.   That is absolute which is unconditional.   Thus the relation of cause and effect between negligence and the injury is a condition, and the plaintiff's own conduct as to negligence contributing to the injury is a condition.   Both of these are at common law conditions to be considered in the right of recovery.   But according to the plaintiff's doctrine the statute dispenses with *all* conditions by creating an absolute liability.   Thus, having proved the defendant's negligence, the plaintiff contends that the statute imposes an absolute liability for the injury, even though the sign had nothing to do whatever in causing the injury; and the same result would follow, assuming the fact to be that the plaintiff's own misconduct was an essentially contributing cause, or even the sole cause, of the injury. Supposing, indeed, that the absence of the sign-board had nothing to do in causing the injury, it must have been either entirely fortuitous or the result of the plaintiff's own negligence.

It is a fundamental rule in the interpretation of statutes that the construction must be put upon the whole and not a part of the words of the act or clause.   An interpretation which gives no force and effect whatever to some important and significant words in a clause or section must be rejected, in the absence of some conclusive reason for disregarding them as mere surplusage.   Now it seems to us that if the plaintiff's construction of section 1288 be correct, the court must entirely reject and disregard the words "sustained by reason of such neglect and refusal," in the clause which provides that "any railway company neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such

neglect and refusal." According to the plaintiff's construction the company is liable for *all* damages sustained by the plaintiff, and not merely such damages as are sustained *by reason of* the "neglect or refusal;" in other words, the defendant is liable, according to this theory, for the damages sustained, whether the same result from the defendant's negligence or not. For the plaintiff contends that the statute imposes an "absolute liability," not a liability depending upon any conditions whatever. It is unimportant, in this view, whether the condition of cause and effect between the negligence and the injury exists or not; in other words, it is not a necessary condition that the damages should be sustained *by reason* of the defendant's neglect or refusal. Even though there should be no connection or relation whatever between the want of a proper sign and the accident; nay, more, though the accident should be the direct and sole result of the plaintiff's own negligence,—the defendant must pay the damages, since the statute creates an "absolute liability." This construction, therefore, simply eliminates from the statute the words "all damages sustained *by reason* of such neglect and refusal."

I do not forget that the section further provides that "in order for the injured party to recover it shall only be necessary for him to prove such neglect and refusal." But these words must be construed in connection with those already quoted, and so as to harmonize with them. It is not necessary to put upon these words a construction which would render the words first quoted nugatory. The words last quoted by no means necessarily imply that the defendant's liability shall be absolute and unconditional, thereby making the words first quoted mere surplusage, and cutting off, as counsel contend, all inquiry into the plaintiff's misconduct or negligence.

The words which provide that in order for the injured party to recover it shall "only be necessary for him to *prove* the defendant's neglect or refusal" to erect the sign, relate *ex vi termini* rather to the measure of the plaintiff's proof than to the nature and extent of the defendant's liability. Nothing is said in this section about the defendant's liability being absolute. If it was the purpose of the legislature to make so radical a change in the law, why was it not expressly declared that the defendant's liability should be absolute and the defense of contributory negligence abolished? Why was so important an innovation left to be inferred from a provision as to what it should be necessary for the plaintiff to prove in order to establish his case? The supreme court of Iowa had, before the passage of the statute in question, established the rule that the plaintiff must in case of per-

sonal injury, in order to recover, prove not only the negligence of the defendant, but his own freedom from contributory negligence. This rule has always been considered unjust and illogical by many members of the bar, and I see no reason to doubt that it was the purpose of this legislation, in the provision under discussion, simply to relieve the plaintiff of this unjust double burden. The legislature simply intended to say to the party injured: "It shall only be necessary for you, in order to recover, to prove the negligence of the defendant in failing to comply with the statute; it shall not be necessary for you to go further and prove that you yourself were not in fault."

This construction not only harmonizes the two provisions of the section quoted above, but it is in strict accordance with our common legal parlance. It is not unusual in legal language to say that it is only necessary for the plaintiff, in order to make out his case, to prove so and so, without for a moment intending to imply that the defendant's liability shall thereby be made absolute, and that he shall be precluded from setting up any proper and usual defense. Again, a construction ought, if possible, to be avoided which leads to injustice or absurdity, and to a plain infraction of established principles, since it is unreasonable to suppose that the legislature intended such results. Let us subject the plaintiff's construction to this test. The liability to the injured party cannot be at the same time absolute and conditional. It must be one or the other. If, therefore, the plaintiff's construction is correct, the railway company must be unconditionally liable for the injury suffered by reason of the mere fact of failing to erect the sign. Now, the absence of the sign may or may not cause the injury or even contribute to it. The plaintiff's doctrine is that the statute creates an absolute liability, and therefore it makes no difference whatever whether any relation of cause and effect exists between the negligence and the injury or not. This would seem to be illogical, absurd, and utterly repugnant to established principles of law. Thus a sign, if it existed, could give no warning to a blind man, and yet, according to the plaintiff's view, if a blind man should venture upon the crossing and receive injury, though he should himself be entirely in fault, the company would be liable. Again, if a party in pitch darkness should, without stopping to listen for a coming train or to look out for its lights, rush upon the crossing and suffer injury, the company would be liable by reason of the absence of the sign, although if the sign were present it could not be seen. So, if a man in full view of a coming train and seeing

his danger should be, against his own will, carried by an ungovernable horse upon the crossing, the company would be liable for the injury to both man and animal because of the absence of the sign. Again, suppose a party should see a train approaching the crossing, he would then have all the warning that a sign could give; yet if he should rashly and of his own negligence venture upon the crossing, taking the chances of escape, the company would be liable for his injuries because of its failure to have up the sign. Thus, if the plaintiff's doctrine of "absolute liability" be sound, might a party recover damages resulting entirely and absolutely from his own fault and negligence. This would be unjust and absurd, as well as clearly repugnant to the provision of the statute that the damages recovered shall be "sustained *by reason* of the neglect or refusal" of the company to erect the sign.

It is said that this absolute liability is founded upon considerations of public policy, and that the legislature so intended it; that the provision was intended to be punitive,—a sort of fine imposed upon the company to compel them to comply with the requirement of the statute. But we have seen that to give the statute this construction it would be necessary to reject or disregard certain express words of the act, and no argument from convenience or policy can justify the court in refusing to give any effect whatever to express words in a statute. Besides, it is difficult to see what sound policy there would be in a law that while inflicting unjust penalty upon one party would encourage negligence in another, by assuring him of damages even resulting from his own carelessness. Sound policy requires that both parties in this class of cases should be put to the exercise of diligence by being made to know that damages may result to them from their failure to exercise reasonable care. If the plaintiff's doctrine be sound, I can see no good reason why a party might not recover for injuries resulting from his own *willful* misconduct in passing a crossing in the face of danger. The plaintiff's counsel admit that there could be no recovery in such case because of the principle that a party can take no advantage from his own wrong. But is not a party's negligence his own wrong as well as his willful misconduct? The difference between negligence and willfulness in a civil action for damages is in the degree only, and not in the essence of the wrongdoing. If, moreover, the statute imposes an absolute liability, and inflicts a sort of fine upon the railway company as a penalty for its non-compliance with the law, and this upon grounds of public

policy, what difference can it make in the question of contributory negligence whether the plaintiff's injury is the result of his mere negligence or his willful misconduct?

Undoubtedly the statute makes the failure on the part of the company to erect the sign conclusive evidence of *negligence*. It is negligence *per se*, and no evidence can be received to remove from the company the imputation of negligence. To this extent the statute changes the common law; but does it follow, in the absence of express words, that the legislature intended to still further change the common law by dispensing with the necessity of all diligence and care on the part of the injured? Was it intended that a plaintiff might willfully and intentionally, or with gross and wanton negligence, precipitate himself in the face of danger, seeing his peril, upon the crossing, and still recover damages for injuries thus received? In other words, was it the intention of the legislature to repeal by mere implication the long-established doctrine of contributory negligence with reference to cases arising under this statute, and give the plaintiff damages caused by his own misconduct? And could it have been the purpose of this legislation to give the plaintiff damages although it should clearly appear that his injuries resulted in nowise from the defendant's negligence in failing to erect the sign, but from some other and wholly different cause? And if the latter question be answered in the affirmative, how are we to reconcile such an answer with the express provision of the statute that the defendant "shall be liable for all damages sustained *by reason of such neglect and refusal.*"

It seems to me that if it had been the purpose of the legislature to make such radical changes in the law involving, in many cases, results at once unjust, illogical, and absurd, its purpose would have been made known in express terms, and not left to doubtful inference. The statute makes the mere non-erection of the sign negligence, and prescribes that no other proof shall be required to show negligence. Doubtless it is a presumption under this statute that if the sign were up the plaintiff would take notice of it, and being thus warned would avoid injury. But I see nothing in this to preclude the defendant from showing affirmatively that the plaintiff was guilty of contributory negligence, without which the injury would not have occurred. Suppose, for example, that the defendant could show that the plaintiff saw the train nearing the crossing, and, nevertheless, rashly attempted to cross in the face of impending danger, what good reason

can there be why he should not be permitted to do so?' What reason would there be in such case in saying that if the sign had been up he might have been warned by it of the coming train and avoided the danger, seeing that he had before him a more impressive warning of the impending danger than any sign-board could have given.

The precise question before the court has not been decided by the supreme court of Iowa. Every case cited from the Iowa reports might be distinguished from the present by essential circumstances. We have, however, no present purpose to review them, since to give them a critical analysis would extend this opinion beyond all reasonable limits. It is sufficient to say that, rightly understood, the Iowa decisions give such decided countenance to the conclusion at which we have arrived as to leave no doubt that the question will, when directly presented to the supreme court of Iowa, be decided as we have here determined it. *Small* v. *R. Co.* 50 Iowa, 338; *Lang* v. *H. C. R. Co.* 49 Iowa, 469; *Dodge* v. *Burlington & C. R. R. Co.* 34 Iowa, 276; *Spence* v. *Chicago & N. W. R. Co.* 25 Iowa, 139–142; *Stewart* v. *Burlington & M. R. Co.* 32 Iowa, 561, 562; *Payne* v. *Chicago, R. I. & P. R. Co.* 44 Iowa, 236.

The motion for a new trial is overruled.

See *Tucker* v. *Duncan*, 9 FED. REP. 867; *Thomas* v. *Delaware, etc., R. Co.* 8 FED. REP. 729.