*Nicholas Van Slyck*, for plaintiff.

*Francis W. Miner* & *Thomas A. Jenckes*, for defendant.

========

MARY A. ORMSBEE, Administratrix, *vs.* BOSTON & PROVIDENCE ·RAILROAD CORPORATION.

A traveller on a highway, when about to cross a railroad track, is bound to look up and down the track before crossing, although the railroad company may not have given the ordinary signals.  Neglect so to do is, in case of accident, contributory negligence on the part of the traveller, unless obstructions prevent a view of the track, or unless he had some assurance of safety from the railroad company which excuses him.

O., a deaf mute, was struck and killed by a train of cars which was making a flying switch across a highway.  The engine had passed by, and O. walked in the highway on to the track, "bent forward, as an old man would walk, with his head bowed down, looking toward the engine."  There was an unobstructed view of the tracks for a long distance in both directions; a gate was closed across the highway on· the further side of the tracks; but there was no stationary bell nor whistle sounded as required by statute.

In an action by O.'s administrator against the railroad company for causing O.'s death: *Held*, that O.'s negligence precluded a recovery.

DEFENDANT'S petition for a new trial.

*February* 10, 1883.   STINESS, J.   In this case it appeared that Paschal Ormsbee, plaintiff's husband and intestate, a deaf mute, was killed while attempting to cross the defendant's track at a public crossing in East Providence.   At this crossing there was

an unobstructed view of the track in both directions, for a long distance, from the approach on the west side where Ormsbee was; there was daylight at the time, and a gate was down on the east side, in plain view from the west side, but no stationary bell nor whistle was sounded while the train was crossing as required by statute.   As a train was making a " flying switch," so called, the engine having passed the crossing towards the south and then backed towards it on another track, Ormsbee walked to and upon the track, " bent forward as an old man would walk, with his head bowed down, looking toward the engine," as stated by the witnesses who saw him.   Without looking to the north, whence the cars were approaching, he was struck by the forward car and instantly killed.   Upon this state of facts the defendant claims that the plaintiff cannot recover, because Ormsbee was guilty of negligence in not looking both ways before he stepped upon the track, and asked for such a ruling.

It was, however, left to the jury to say whether the diversion of his attention by the passing and backing of the engine would excuse him for not doing so, or whether in view of that fact he was bound to look elsewhere.

That ordinary prudence requires one who enters upon so dangerous a place as a railroad crossing to use his senses, to listen, to look, or to take some precaution for the purpose of ascertaining whether he may cross in safety, is an established rule both of law and experience.   *Railroad Co.* v. *Houston*, 5 Otto, 697 ; *Wright* v. *Boston & Maine Railroad*, 129 Mass. 440 ; *Hinckley* v. *Cape Cod R. R. Co.* 120 Mass. 257 ; *Allyn* v. *Boston & Albany R. R. Co.* 105 Mass. 77 ; *Butterfield* v. *Western R. R. Co.* 10 Allen, 532 ; *McGrath* v. *N. Y. Central & H. R. Railroad Co.* 59 N. Y. 468 ; *Gorton* v. *Erie R. R. Co.* 45 N. Y. 660 ; *Harty* v. *Central R. R. Co. of N. J.* 42 N. Y. 468 ; *Wilcox* v. *Rome, Watertown & Og. R. R. Co.* 39 N. Y. 358 ; *Welds* v. *Hudson River R. R. Co.* 24 N. Y. 430 ; *Chicago & North Western R. R. Co.* v. *Hatch*, 79 Ill. 137 ; *Illinois Central R. R. Co.* v. *Goddard*, 72 Ill. 567 ; *Chicago, Rock Island & Pacific R. R. Co.* v. *Bell*, 70 Ill. 102 ; *St. Louis & South Eastern R. R. Co.* v. *Mathias*, 50 Ind. 65 ; *Haines* v. *Illinois Central R. R. Co.* 41 Iowa, 227 ; *Brown* v. *Milwaukee & St. Paul R. R. Co.* 22 Minn. 165 ; *Ben-*

*ton* v. *Central Railroad of Iowa*, 42 Iowa, 192 ; *Pennsylvania R. R. Co.* v. *Righter*, 42 N. J. Law, 180 ; *Zimmerman* v. *Hannibal & St. Joseph R. R. Co.* 71 Mo. 476.

We have been referred to numerous cases in the elaborate brief of the plaintiff, which, it is claimed, show that this is not a rule of law but a matter of fact, the propriety or necessity of which is to be determined by the jury. An examination of these cases, however, shows that most of them are not in conflict with such a rule, but may be classed as exceptions to it, on the following grounds :

*First.* Where the view of the track is obstructed, and hence where the injured party, not being able to see, is obliged to act upon his judgment at the time ; in other words, where compliance with the rule would be impracticable or unavailing. *Commonwealth* v. *Fitchburg R. R. Co.* 10 Allen, 189 ; *Craig* v. *New York & New Haven R. R. Co.* 118 Mass. 431 ; *Webb* v. *Portland & Kennebec R. R. Co.* 57 Me. 117 ; *Johnson* v. *Hudson River R. R. Co.* 20 N. Y. 66 ; *Continental Improvement Co.* v. *Stead*, 5 Otto, 161 ; *Pennsylvania R. R. Co.* v. *Ogier*, 35 Pa. St. 60 ; *Fordham* v. *London, Brighton &c. R. R. Co.* L. R. 3 C. P. 368 ; *Stubley* v. *London & North Western R. R. Co.* L. R. 1 Exch. 13 ; *Dublin, Wicklow & Wexford R. R. Co.* v. *Slattery*, L. R. 3 App. Cas. 1155.

In this last case Lord Chancellor Cairns remarks : " If a railway train, which ought to whistle when passing through a station, were to pass through without whistling, and a man were in broad daylight, and without anything either in the structure of the line or otherwise to obstruct his view, to cross in front of the advancing train and to be killed, I should think the judge ought to tell the jury that it was the folly and recklessness of the man, and not the carelessness of the company, which caused his death."

*Second.* Where the injured person was a passenger going to or alighting from a train, and hence, under an implied invitation and assurance by the company to cross the track in safety. *Brassell* v. *N. Y. C. & H. R. Railroad Co.* 84 N. Y. 241 ; *Gaynor* v. *Old Colony & Newport R. R. Co.* 100 Mass. 208 ; *Chaffee* v. *Boston & Lowell R. R. Co.* 104 Mass. 108 ; *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137 ; *Wheelock* v. *Boston & Albany R. R. Co.*

105 Mass. 203 ; *Stapley* v. *London, Brighton &c. R. R. Co.* L. R. 1 Exch. 21.

*Third.* Where the direct act of some agent of the company had put the person off his guard and induced him to cross the track without precaution.   *Warren* v. *Fitchburg R. R. Co.* 8 Allen, 227.   In this case the plaintiff was a passenger and shown across the track by the station agent.

Other cases cited by the plaintiff apparently, but most of them only apparently, sustain her claim that an omission to look where the view is plain is not negligence as a matter of law but a question for the jury.

In *Williams* v. *Grealy,* 112 Mass. 79, the court refused to disturb a verdict for the plaintiff for an injury from a runaway horse, towards which it was claimed she did not look, on the ground that they were left in ignorance by the record " of what was proved as to what other objects were in the street, or whether the horse *could have been seen* by her."   A *dictum* follows that the mere fact of not looking when one attempts to cross a railroad is not conclusive evidence of want of care, citing only *Chaffee* v. *Boston & Lowell R. R. Co.* 104 Mass. 108, which was the case of a passenger.

*French* v. *Taunton Branch Railroad,* 116 Mass. 537, is a case exactly in point for the plaintiff ; but as it is in conflict with the earlier and later decisions of the same court above cited, we cannot regard it as authority.   Furthermore it purports to rest only on the authority of *Wheelock* v. *Boston & Albany R. R. Co.* 105 Mass. 203, and *Chaffee* v. *Boston & Lowell R. R. Co.* 104 Mass. 108, both of which were cases of passengers, therefore not applicable, and that of *Allyn* v. *Boston & Albany R. R. Co.* 105 Mass. 77, which is directly contrary to the decision of the case ; holding, that as a driver did not look there was no evidence of due care for the jury, and that the fact that he did not know there was a railroad there was no excuse, because he must have seen it if looking, and if he was not looking he was negligent.

In some of the New York cases, there was an evident inclination to hold the law as claimed by the plaintiff, not by direct statement to that effect, it is true, but substantially that, by allowing the plaintiff's case to be determined in view of the defendant's negligence.

In *Brown* v. *N. Y. Central R. R. Co.* 32 N. Y. 597, a case similar to the one before us, a majority of the court held that as there were no signals of danger, the driver's care was a question for the jury, even though he might have seen the cars in time to have stopped. But in this case there were obstructions to the view until one was close upon the track, and the driver stopped twice for cars to pass ; so that it is by no means certain that the court meant to decide as much as their language would imply. This case was affirmed in *Stillwell* v. *N. Y. Central R. R. Co.* 34 N. Y. 29, another case growing out of the same accident.

Again in *Ernst* v. *Hudson River R. R. Co.* 35 N. Y. 9, it was broadly laid down that a traveller is not bound to look up and down a track before crossing when there is no signal of approaching cars, and a nonsuit was reversed. After a trial the case came up again in 39 N. Y. 61, and a judgment for the plaintiff was affirmed, but, by a majority, on the grounds that under all the circumstances it was doubtful whether the traveller *did or did not look* up and down the track as far as he could see it ; whether in the short distance he had to drive he could, if he did look, see the approaching train, &c. : clear questions of fact for a jury. The doctrine of the former decision is repudiated in these words : " A traveller approaching a railroad track is bound to use his eyes and ears, so far as there is opportunity. Negligence in the railroad company in the giving of signals, or in omitting precautions of any kind, will not excuse his omission to be diligent in such use of his own means of avoiding danger. And where, by such use of his senses, the traveller might avoid danger, notwithstanding the neglect to give signals or warning, his omission is concurring negligence, and should be so peremptorily declared by the court ; and where proof of this is clear, the plaintiff thus negligent should be nonsuited."

But this very question, in its simplicity, was again before the court in *Wilcox* v. *Rome, Watertown & Og. R. R. Co.* 39 N. Y. 358. At a highway crossing, where approaching cars could be seen in season to avoid them, a shifting engine had passed in one direction, while a train, without sounding bell or whistle, was coming from another. The rule was laid down with clearness and certainty that in such a case a man must look. Miller, J., says,

p. 366 : " It is very plain that the deceased could have seen the approaching train had he looked for that purpose. There were no obstructions to his vision, and no occasion to divert his attention which excused him from observing. To hold that a party is excused, where he has been careless, because the other party has failed to give the accustomed signals, or for any other act of negligence on his part, strikes at the principle on which such actions are based. Such a rule is not sustained by any of the adjudged cases." In this opinion the foregoing cases are reviewed, and an attempt is made to distinguish them. So far, however, as they hold that neglect by the railroad company to give signals exonerates a traveller from the duty of looking for what he may plainly see, they are practically overruled ; and by reference to the later cases cited above it appears that this decision has been followed, and that the rule therein laid down is the law in New York.

In *Detroit & Milwaukee R. R. Co.* v. *Van Steinburg*, 17 Mich. 99, it is to be noticed that after a verdict for the plaintiff, defendant in error, a new trial was granted upon questions of admissibility of evidence. Nevertheless, the court approved the leaving of the plaintiff's negligence to the jury, but upon the ground that as the train was coming with extraordinary and unprecedented speed, but for which he could have crossed in safety, and as he had heard its whistle at a half mile post and had looked for it at a point before reaching the track without seeing it, he might properly rely on his calculations of ordinary time and distance without looking again, and hence be in the exercise of due care. Even upon this ground, however, Judge Campbell dissented, and Judge Cooley, who gave the opinion, thought the jury should have found differently. The case is clearly distinguishable from the one before us.

*Wanless* v. *North Eastern R. R. Co.* L. R. 6 Q. B. 481, affirmed in *Directors of North Eastern R. R. Co.* v. *Wanless*, L. R. 7 H. L. 12, in which a verdict for the plaintiff was sustained, is quite like the present case, but the question of contributory negligence was not raised in it. Kelly, C. B., says : " I am far from saying that these circumstances which appear to have been proved at the trial were not evidence of contributory negligence; for I cannot say that any one crossing a railway, though it might have been intimated to him that he may cross in safety, still when he is

upon the railway, ought not to look upon one side and upon the other to see whether a train is approaching. But we are not called upon to determine any question of contributory negligence."

This review of the cases is sufficient to show the rule to be uniform and unquestionable, that a traveller in crossing a railroad, even in the absence of ordinary signals, must look up and down the track, except where he is unable to do so, or where, as a passenger or otherwise, he has an assurance of safety from the company which excuses him. Indeed, it is quite unusual to find so little difference in so many cases, and it must be for the reason that the rule is founded, not in opinion or judgment, but in common prudence and experience to such an extent that courts can declare it as law.

The question, therefore, which is decisive of this case is whether Ormsbee was excused from compliance with this rule on account of the diversion of his attention from the north by apprehension of danger from the engine backing from the south.

Clearly not. To say that he was, would be to hold that danger apprehended in one direction excuses a person from looking to the other, which has never been claimed in any case. If danger threatens on one hand, a traveller on foot at least can stop until he sees whether there is safety on the other, and if he does not do this he takes the risk upon himself. It is no harsh rule that a man should turn his head to look for a train that may be in plain sight.

With reference to the manifest visible peril Ormsbee took no precaution at all, and as this precludes the plaintiff's recovery, whatever may have been the defendant's omission, it should have been so stated to the jury.

It is unnecessary to consider the exceptions as to damages, as a new trial must be granted for the reason given.

*Petition granted.*

*E. L. Barney* and *Perce & Hallett,* for plaintiff.
*Arnold Green,* for defendant.